**Affirmed and Majority and Concurring Opinions filed February 24, 2015.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-13-01021-CR
## NO. 14-13-01022-CR

---

## PAUL A. CRAYTON, Appellant

## V.

## THE STATE OF TEXAS, Appellee

---

**On Appeal from the 212th District Court**
**Galveston County, Texas**
**Trial Court Cause Nos. 11-CR-2593; 11-CR-2594**

---

# M A J O R I T Y   O P I N I O N

In this appeal of convictions for murder and aggravated assault with a deadly weapon, we must assess whether the trial court abused its discretion in denying a defendant's motions for mistrial. We also determine whether a trial court's limiting instruction on evidence of an extraneous offense constituted an improper comment on the weight of the evidence. We affirm.

# I. FACTUAL AND PROCEDURAL BACKGROUND

Appellant Paul A. Crayton shot complainant James Martin several times in the parking lot of the Bourbon Street Bar. Appellant then re-entered the bar. Complainant Derrick Yell ran to the restroom and barricaded himself against the door. Appellant tried, but failed to push the door open and so resorted to firing shots through the door. Appellant then fled. On the way out of the bar, appellant fired additional shots at Martin, who lay wounded on the ground. Martin died.

Appellant was indicted for Martin's murder and for the aggravated assault with a deadly weapon of Yell. Appellant pleaded "not guilty" to each charge.

At trial by jury, appellant admitted to the conduct, but claimed he acted in self-defense. Appellant testified that he had conversations with Martin and Yell on two occasions before the incident at the Bourbon Street Bar. According to appellant, in the first conversation, Martin accused appellant of lying; in the second conversation, Martin accused appellant of threatening to harm Martin or one of Martin's family members and Martin threatened to retaliate. Appellant testified that when he arrived at Bourbon Street Bar, he saw Martin and Yell whispering to each other and appellant thought that Martin and Yell looked like they were going to harm him. Appellant testified that outside the bar, Martin pulled a gun and appellant shot him. According to appellant, appellant went back into the bar because he knew that Yell would harm him. On the way out, according to appellant, Martin was still fumbling with his gun and so appellant shot him as appellant left.

Yell testified that he had encountered appellant before the incident at Bourbon Street Bar and on that previous occasion appellant had stated that he thought Martin and Yell had "snitched" on him and informed federal authorities that appellant had committed crimes related to drug use and distribution. A patron

of the bar who had known appellant since appellant was a child and who had purchased appellant a beer that evening, testified that appellant informed him that some individuals in that bar were going to die that evening. After the shooting, appellant evaded authorities for months. When appellant was finally arrested, he immediately stated to the arresting officer, "You finally got me."

The jury found appellant guilty of both murder and aggravated assault with a deadly weapon. The jury assessed punishment at seventy-five years' confinement for the murder charge and twenty years' confinement for aggravated assault with a deadly weapon. Appellant filed a motion for new trial. It was denied.

## II.    ISSUES AND ANALYSIS

### A. Prosecutor's Comments During Closing Argument

Construing appellant's brief liberally, we discern that appellant is asserting in his first issue that the trial court erred in denying his motion for mistrial after the prosecutor commented on appellant's right to remain silent and in denying appellant's motion to instruct the jury to disregard a second comment made by the prosecutor relating to appellant's right to remain silent.

### 1. Prosecutor's Comment on Appellant's Right to Remain Silent

Appellant argues that the trial court erred in denying his motion for mistrial after the prosecutor commented on appellant's right to remain silent. Appellant objected to two different comments made by the prosecutor during closing argument. In the first, the prosecutor asked: "At that point, does [appellant] go to the police and say, 'Hey, sorry, I did this in self-defense?' [Appellant] goes lam for over three months and when Officer Fowler arrests him, all he says is, 'You got me.'" Appellant objected and the trial court sustained the objection and instructed the jury to disregard the prosecutor's statement. The trial court denied appellant's

3

motion for mistrial.

We presume for the sake of argument that the prosecutor's statement was an improper comment on appellant's right to remain silent. The trial court sustained the objection to the first comment, gave the jury an instruction to disregard, and denied appellant's motion for mistrial. We review a trial court's denial of a motion for mistrial under the abuse-of-discretion standard. *See Ocon v. State*, 284 S.W.3d 880, 884 (Tex. Crim. App. 2009). Under this standard, we view the evidence in the light most favorable to the trial court's ruling and uphold the ruling if it falls within the zone of reasonable disagreement. *Id.* A mistrial is a remedy intended for extreme circumstances, when prejudice is incurable and less drastic alternatives have been explored. *See id.* In determining whether a prejudicial event was so harmful as to warrant reversal on appeal, we consider the prejudicial effect, any curative measures taken, and the certainty of conviction absent the prejudicial event. *See Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004). Generally, a prompt instruction to disregard by the trial court will cure error associated with improper closing argument, unless it appears the argument was so clearly calculated to inflame the minds of the jury or is of such a damning character as to suggest it would be impossible to remove the harmful impression from the juror's minds. *See Logan v. State*, 698 S.W.2d 680, 683–84 (Tex. Crim. App. 1985).

The prosecutor's statement refers primarily to appellant's pre-arrest silence and his immediate spontaneous statement upon arrest, which was made before any *Miranda* warnings. Commentary on appellant's pre-arrest and post-arrest, pre-*Miranda* silence is permissible. *Salinas v. State*, 369 S.W.3d 176, 178–79 (Tex. Crim. App. 2012). To the extent the prosecutor argued that appellant made no further statement after arrest, the prosecutor's statement was brief and

4

insignificant. *See Archie v. State*, 221 S.W.3d 695, 700 (Tex. Crim. App. 2007). In addition, the trial court took a curative measure in instructing the jury to disregard the prosecutor's comment. *See Coble v. State*, 330 S.W.3d 253, 292–93 (Tex. Crim. App. 2010). Regarding the certainty of conviction absent the prosecutor's comment, the State presented overwhelming evidence that appellant did not act in self-defense. There was evidence that upon entering the bar, appellant informed a patron that two individuals would die that night. There was no evidence that Martin fired any shots at appellant. After shooting Martin, appellant entered the bar and pursued Yell, who had secured himself in the restroom in an attempt to protect himself from appellant, and after failing to hit Yell with his gunshots, appellant fired additional shots at Martin, who remained on the ground in the location where appellant shot him the first time. We conclude that the prosecutor's comment did not rise to the level of an "extreme circumstance" that was "incurable." *See Ocon*, 284 S.W.3d at 884. Under the circumstances presented, we conclude that any potential prejudice associated with the prosecutor's statements was cured by the trial court's instructions to disregard. *See Logan*, 698 S.W.2d at 683–84. The trial court did not abuse its discretion in denying appellant's motion for mistrial after the prosecutor's first comment. *See id.*

### 2. Prosecutor's Comment Alleged to Have Offended Appellant's Right Against Self-Incrimination

During a later portion of closing argument, the prosecutor said: "Just because [appellant] said it's self-defense absolutely, positively, does not mean that it's even true. That's just what he is saying now." The trial court sustained appellant's objection, but denied appellant's request for an instruction for the jury to disregard the statement.[1]

---

[1] We liberally construe appellant's argument as a contention that the trial court erred in failing to

We presume for the sake of argument that the prosecutor's comment was an improper jury argument that offended appellant's privilege against self-incrimination and that the trial court erred in denying appellant's request for an instruction for the jury to disregard the statement. Because we presume for purposes of analysis that the prosecutor's comment violated appellant's privilege against self-incrimination, we presume the error was of a constitutional magnitude and conduct our assessment of harm using the standard set forth in Texas Rule of Appellate Procedure 44.2(a). *See Wyborny v. State*, 209 S.W.3d 285, 292 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd.). Under the latter presumption, we must reverse appellant's conviction unless we determine beyond a reasonable doubt that the presumed error did not contribute to appellant's conviction. Tex. R. App. P. 44.2(a). A constitutional error does not contribute to the conviction if the verdict "'would have been the same absent the error.'" *See Clay v. State*, 240 S.W.3d 895, 904 (Tex. Crim. App. 2007) (*quoting Neder v. United States*, 527 U.S. 1, 17, 119 S.Ct. 1827, 1837, 144 L.Ed.2d 35 (1999)). As a reviewing court, we must calculate as nearly as possible the probable impact of the error on the jury in light of the record as a whole. *See Wall v. State*, 184 S.W.3d 730, 746 (Tex. Crim. App. 2006); *Zakkizadeh v. State*, 920 S.W.2d 337, 341 (Tex. App.—Houston [1st Dist.] 1995, no pet.). We consider such factors as the nature of the error, whether the State emphasized the error, the probable implications of the error, and the weight the jury likely would have assigned to the error in the course of its deliberations. *See Snowden v. State*, 353 S.W.3d 815, 822 (Tex. Crim. App. 2011). The trial court's error is not harmless beyond a reasonable doubt if there is a reasonable likelihood that the error materially affected the jury's deliberations. *See*

instruct the jury to disregard the prosecutor's comments. To the extent appellant argues that the trial court erred in denying his motion for mistrial, this argument is not preserved for appellate review because appellant did not move for a mistrial regarding this statement. *See* Tex. R. App. P. 33.1(a).

*Neal v. State*, 256 S.W.3d 264, 284 (Tex. Crim. App. 2008).

Based upon our review of the record, we conclude beyond a reasonable doubt that any error by the trial court did not contribute to appellant's conviction. As noted, the State presented overwhelming evidence that appellant did not act in self-defense. In addition to the evidence of appellant's actions in the bar on the night of the shootings, the State properly presented evidence that appellant evaded law enforcement officials for months. To the extent the State's additional brief statement that self-defense was "just what [the appellant was] saying now" is a comment on appellant's failure to tell police officers that he acted in self-defense, the comment was brief and its impact was minimal, particularly when considered in light of the other evidence before the jury, including evidence that appellant evaded law enforcement officials. We conclude beyond a reasonable doubt that the prosecutor's statement did not contribute to appellant's conviction and that the trial court's failure to instruct the jury to disregard the prosecutor's comment on appellant's post-arrest silence was harmless. *See Crocker*, 248 S.W.3d at 307. Accordingly, appellant's first issue is overruled.

## B. Pre-trial Newspaper Article

In his second issue, appellant asserts that he was denied his Sixth Amendment right to an impartial jury because the jurors' impartiality was compromised by an article in the local newspaper that described evidence which had been suppressed. Appellant asserts that the pre-trial publicity was so substantial and prejudicial that it raised a presumption the jurors were biased and "there is no way" appellant could have received a fair trial after the "damaging facts" were known to the jury.

Appellant does not assert how he preserved error as to his second issue in the trial court. Appellant did not move for a transfer of venue, and appellant does

not assert on appeal that the trial court erred in failing to transfer venue. *See* Tex. Code Crim. Proc. Ann. art. 31.01, *et seq*. (West, Westlaw through 2013 3d C.S.) (providing procedures for transferring venue of a criminal case under various circumstances relating to the inability to obtain a fair and impartial trial in the county in which the prosecution was instituted). Our review of the record reveals that, shortly after voir dire began, appellant moved for a mistrial and asserted that the newspaper article was so prejudicial that appellant could not receive a fair trial. Later during voir dire, appellant moved for a mistrial based on statements made by a venire member regarding the newspaper article. We find no other place in the record in which appellant preserved error in the trial court as to complaints regarding pretrial publicity or the newspaper article. To the extent appellant asserts appellate complaints regarding pretrial publicity or the newspaper article beyond the complaints raised in the two motions for mistrial, appellant failed to preserve error in the trial court regarding these complaints. *See* Tex. R. App. P. 33.1(a); *Austin v. State*, 222 S.W.3d 801, 811 (Tex. App.—Houston [14th Dist.] 2007, pet. ref'd) (holding appellant failed to preserve error as to a complaint regarding an alleged violation of the Confrontation Clause of the Sixth Amendment of the United States Constitution). We now address whether the trial court erred in denying these two motions.

We review a trial court's denial of a mistrial for an abuse of discretion. *Ocon v. State*, 284 S.W.3d 880, 884 (Tex. Crim. App. 2009). A mistrial is a device used to halt trial proceedings when error is so prejudicial that expenditure of further time and expense would be wasteful and futile. *Ladd v. State*, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999). Because a mistrial is an extreme remedy, a mistrial should be granted only when prejudice is incurable and less drastic alternatives have been exhausted. *See Ocon,* 284 S.W.3d at 884. In determining

whether a prejudicial event was so harmful as to warrant reversal on appeal, we consider the prejudicial effect, any curative measures taken, and the certainty of conviction absent the prejudicial event. *See Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004). When a party requesting a mistrial does not first seek a lesser remedy, a reviewing court cannot reverse the trial court's judgment if the alleged error could have been cured by a less drastic alternative. *Ocon v. State*, 284 S.W.3d 880, 884–85 (Tex. Crim. App. 2009).

### 1. *Appellant's First Motion for Mistrial*

Before the jury trial, appellant filed motions to suppress evidence. During the suppression hearing, the State incorrectly represented to the trial court that one of the items of evidence that appellant sought to have suppressed was a "kill list" with Martin's name crossed out. The trial court granted appellant's motion to suppress the evidence. The next morning, the State informed the trial court that contrary to the statements the prosecutor had made the day before, there was no line scratched through Martin's name. An article on the front page of the *Galveston Daily* News that day contained a description of the previous day's hearing, including all of the evidence that was presented and suppressed. The newspaper reporter noted in the article that the notebook contained a list with Martin's name scratched through.

Before voir dire examination of the venire members had begun, appellant informed the trial court of the newspaper article. Shortly after voir dire began and before any reference to the newspaper article had been made before the venire members, appellant moved for a mistrial, asserting the article was so prejudicial that appellant could not receive a fair trial. The trial court denied the motion for mistrial.

In this first motion for mistrial, appellant focused on the existence of a

9

newspaper article rather than anything that occurred during the course of questioning the venire panel. Appellant moved for a mistrial based his alleged inability to receive a fair trial before counsel had queried the venire members to determine whether any of them had even read the newspaper article. If the trial court had granted a mistrial, it would have dismissed this venire panel and began another voir dire with a different panel of venire members from Galveston County. At the time appellant moved for mistrial, there was no evidence that any venire member had read the article, let alone been influenced by its contents. We cannot conclude, based on the evidence before the trial court, that the trial court abused its discretion in denying this motion for mistrial. *See Ocon*, 284 S.W.3d at 885.

### 2. *Appellant's Second Motion for Mistrial*

Before the attorneys began their voir dire examination, the trial court informed the venire members that an article had appeared in the newspaper describing a hearing that occurred, but that both attorneys agreed the information in the article was inaccurate. The trial court explained that the reporter was present at the hearing only briefly, saw only part of the hearing, left, and then later the attorneys approached the judge to inform him that they were mistaken about some of the representations they made at the hearing. The trial court then explained to the venire members that the attorneys would ask them if they would be able to put aside the information in the newspaper article. Several venire members stated that they had read the article and their minds were made up or were leaning in one direction. A few stated that the article was not compelling. While counsel was questioning the venire members regarding the newspaper article, the following exchange occurred:

> [Venire member]: The newspaper generally gets it all wrong. I still have a problem. You have to do a really good job, whoever is protecting him, before I would change my mind.

[Counsel]: Okay.  Hang on.  Because I was kind of, a little bit of both. Newspapers get a lot of stuff wrong?

[Venire member]: A lot of stuff wrong.

[Counsel]: My question is: Would you be able to - - 33.

[Venire member]: There you go.

[Counsel]: I can read it upside down.

[Venire member]: Whoever is taking care of that man has to do a good job to turn my mind around, from what I read.

After this exchange, appellant's counsel approached the bench and moved for a mistrial based upon the statements made by the venire member.  The trial court denied the motion.

Appellant did not request that the trial court instruct the panel to disregard the responses given by the venire member.  *See Unkart v. State*, 400 S.W.3d 94, 102 (Tex. Crim. App. 2013) (noting that a timely instruction to disregard statement during voir dire would have cured any error); *Young v. State*, 137 S.W.3d 65, 71 (Tex. Crim. App. 2004) (concluding that a timely instruction to disregard statement by venire member during voir dire would have cured any prejudice).  Generally, a prompt instruction to disregard by the trial court will cure error associated with improper statements during voir dire, unless it appears the statements were so clearly calculated to inflame the minds of the venire members or are of such a damning character as to suggest it would be impossible to remove the harmful impression from the minds of the venire members. *See Logan v. State*, 698 S.W.2d 680, 683–84 (Tex. Crim. App. 1985).  The statement by the juror did not rise to the level of an "extreme circumstance" that was "incurable." *See Ocon*, 284 S.W.3d at 884. Under the circumstances presented, we conclude that any potential prejudice associated with these statements could have been cured by a prompt instruction to disregard. *See Logan*, 698 S.W.2d at 683–84. The trial court did not abuse its discretion in denying appellant's motion for mistrial.  *See id.* Accordingly, we

overrule appellant's second issue.

## C. Extraneous-Offense Instruction

In his third issue, appellant argues that the trial court erred in including an extraneous-offense instruction in the jury charge because the instruction constituted a comment by the trial court judge on the weight of the evidence. A trial court may not submit a charge that comments on the weight of the evidence. Tex. Code Crim. Proc. Ann. art. 36.14 (West, Westlaw through 2013 3d C.S.). A charge falls into that category if the charge assumes the truth of a controverted issue or directs undue attention to particular evidence. *See Lacaze v. State*, 346 S.W.3d 113, 118 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd). In determining whether the charge improperly comments on the weight of the evidence, we consider the court's charge as a whole and the evidence presented at trial. *See id.*

Evidence was admitted that appellant believed the deceased "snitched" on him to federal authorities. The trial court included the following jury instruction in the charge:

> You are instructed that if there is any testimony before you in this case regarding the Defendant's having committed offenses other than the offense alleged against him in the indictment in this case, you cannot consider said testimony for any purpose unless you find and believe beyond a reasonable doubt that the Defendant committed such other offenses, if any were committed, and even then you may only consider the same in determining the motive, if any, in connection with the offense, if any, alleged against him in the indictment in this case, and for no other purpose.

The instruction is not a comment upon the weight of the evidence. On the contrary, the instruction advises the jury that if there is testimony that the accused committed an extraneous offense, the jury cannot consider that testimony for any

purpose unless the jury finds beyond a reasonable doubt that the defendant committed the extraneous offense, if any. Even then, the trial court instructs that the jury may consider the extraneous offense only in determining motive, if any, in connection with the charged offense, if any. In this instruction, the trial court did not assume the truth of a controverted issue or direct undue attention to particular evidence. This instruction did not constitute a comment on the weight of the evidence. *See Fair v. State*, 465 S.W.2d 753, 754–55 (Tex. Crim. App. 1971); *Brooks v. State*, 580 S.W.2d 825, 833 (Tex. Crim. App. [Panel Op.] 1979); *Smith v. State*, 959 S.W.2d 1, 27 (Tex. App.—Waco 1997, pet. ref'd). Accordingly, we overrule appellant's third issue.

### III. CONCLUSION

The trial court did not abuse its discretion in denying appellant's motion for mistrial based on the prosecutor's comment during closing argument. Any error in the trial court's denial of appellant's request for an instruction to disregard the second challenged statement during closing argument was harmless beyond a reasonable doubt. The trial court did not abuse its discretion in denying appellant's two motions for mistrial during voir dire regarding the newspaper article. The extraneous-offense instruction in the jury charge did not constitute a comment on the weight of the evidence, and the trial court did not err in submitting this instruction.

The judgment of the trial court is affirmed.


/s/      Kem Thompson Frost
Chief Justice


Panel consists of Chief Justice Frost, Justices Christopher and Busby (Christopher, J., concurring).

Publish — TEX. R. APP. P. 47.2(b).

14