**Affirmed and Memorandum Opinion filed May 7, 2019.**



**In The**

# Fourteenth Court of Appeals

---

## NO. 14-18-00113-CR

---

**DANIEL MORENO, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 337th District Court**
**Harris County, Texas**
**Trial Court Cause No. 1540276**

---

## M E M O R A N D U M   O P I N I O N

A jury found appellant Daniel Moreno guilty of the offense of continuous sexual abuse of a young child, and the trial court assessed punishment at twenty-five years' confinement. Appellant challenges his conviction in four issues. First, he asserts that the jury charge erroneously authorized a non-unanimous verdict. Second, appellant contends that the trial court improperly permitted two separate outcry witnesses to testify. Third, he argues that the trial court erred in permitting the doctor who examined the child complainant to testify that the complainant

identified appellant as her abuser.  Finally, appellant asserts that the trial court erred in denying his motion for mistrial based on the prosecutor's alleged improper statement during closing argument.

Concluding that his issues lack merit, we affirm.

## Background

Appellant dated and lived with Amanda on and off from 2013 through 2016. Amanda had two sons and a daughter, "Karen,"[1] who was around nine to ten years old when appellant began dating Amanda.  Appellant had two children, including a daughter around Karen's age, "Dorinda."   Several months after Amanda and appellant broke up, Dorinda's mother—appellant's ex-wife—informed Amanda that Karen told Dorinda that appellant had sexually abused her.  Upon hearing this information, Amanda and Karen's father immediately took Karen to the Pasadena Police Department to file a report.  At the police station, Karen informed Officer Asli Tuzun that appellant had been sexually abusing her.  After reporting the abuse to the police, Amanda took Karen to the Children's Assessment Center ("CAC") for a forensic interview and a medical exam.  Following an investigation, appellant was arrested and indicted for continuous sexual abuse of a child under the age of fourteen.

At appellant's trial, Karen, then fourteen years old, testified that appellant began touching her inappropriately when she was nine.  Karen testified that the first incident occurred when appellant came into her room at night, woke her up, pulled her pants down, and touched her vagina.  Karen described other incidents, which occurred frequently in the afternoon while her mother was at work and she was alone with appellant, during which appellant touched her vagina while "touch[ing] himself."  Karen also testified about incidents when appellant touched her vagina

---

[1] To protect the privacy of the minors in this case, we identify them by pseudonyms.

2

with his penis, after which she felt "warmness and wet." Appellant would then wipe Karen with a towel and tell her to take a shower. Karen described other incidents when appellant had her put her hand on his penis and move her hand "up and down." According to Karen, the sexual abuse happened "many times." When Karen was eleven or twelve, she told Dorinda that appellant had been touching her. Karen did not tell anyone other than Dorinda about the abuse while it was happening. Karen testified that appellant continued sexually abusing her until he and Amanda broke up in 2016.

Two outcry witnesses testified regarding different incidents of sexual abuse that Karen described to them. First, Officer Tuzun, to whom Karen first spoke about the sexual abuse, testified that Karen told her that when Karen was eleven years old, appellant sexually assaulted her. According to Officer Tuzun, Karen described incidents in which appellant sexually assaulted her in the mornings before Amanda awoke: appellant would begin touching Karen's genitals, then grab her hands and place a pillow over her face. Karen also described incidents when appellant forced her to touch his genitals and inserted his fingers into Karen's vagina. During the most recent incident, which occurred several months before Karen spoke to Officer Tuzun, Karen was home alone with her brothers when appellant entered Karen's room, locked the door, and forced Karen to "grab his genitals." Officer Tuzun described Karen's demeanor during her outcry as "extremely emotional" and "crying." Although Karen was visibly distraught, she did not seem unsure about any of the information she reported to Officer Tuzun.

The CAC forensic interviewer, Ayrial Diop, also testified concerning Karen's forensic interview. Diop explained that, during this interview, Karen gave details about the sexual abuse, specifically, that appellant often used a clear, cold cream that smelled like rubber when he was touching her. According to Diop, Karen explained

3

that appellant removed the cream from a drawer and rubbed it on her vagina. Karen also told Diop that appellant touched her vagina with his penis and that appellant "would make her go up and down with her hands on his penis."

Appellant also testified and denied that he sexually assaulted Karen. He explained that, around the time that these allegations came to light, he was seeking primary custody of his two children, including Dorinda, from his previous marriage.

After both sides rested and closed, the jury found appellant guilty as charged in the indictment. The trial court sentenced appellant to twenty-five years' confinement in the Texas Department of Criminal Justice, Institutional Division. This appeal timely followed.

## Analysis

### A. Alleged Charge Error

In his first issue, appellant argues that the trial court abused its discretion by submitting a jury charge that improperly authorized a non-unanimous verdict. Specifically, though the penal code requires the jury to agree unanimously that two or more acts of sexual abuse occurred during a period that is thirty or more days' in duration, appellant contends that the jury charge did not require all jurors to agree unanimously that appellant committed two or more acts of sexual abuse separated by at least thirty days. We evaluate claims of charge error using a two-step process, considering first whether error exists. *See Navarro v. State*, 469 S.W.3d 687, 698 (Tex. App.—Houston [14th Dist.] 2015, pet. ref'd) (citing *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005)). If we determine charge error occurred, we then analyze that error for harm. *Id.* (citing *Almanza v. State*, 686 S.W.2d 157 (Tex. Crim. App. 1984)). We conclude that the charge language identified was not erroneous and thus do not reach the harm issue.

A jury must reach a unanimous verdict about the specific crime the defendant committed. *Cosio v. State*, 353 S.W.3d 766, 771 (Tex. Crim. App. 2011); *Landrian v. State*, 268 S.W.3d 532, 535 (Tex. Crim. App. 2008); *see also Pollack v. State*, 405 S.W.3d 396, 404-05 (Tex. App.—Fort Worth 2013, no pet.). But the jury is not required to agree unanimously on preliminary factual issues that underlie the verdict, such as the manner and means by which the offense is committed. *See Kitchens v. State*, 823 S.W.2d 256, 258 (Tex. Crim. App. 1991). To convict a defendant of continuous sexual abuse of a young child, the jury must unanimously agree that the defendant, during a period that is at least thirty or more days in duration, committed two or more acts of sexual abuse.[2] *See* Tex. Penal Code § 21.02(b)(1), (d). Jury members need not agree unanimously on which specific acts of sexual abuse the defendant committed or the exact dates of these acts. *See id.* § 21.02(d); *accord Carmichael v. State*, 505 S.W.3d 95, 105-06 (Tex. App.—Austin 2016, pet. ref'd) (holding that individual acts of sexual abuse are manner and means, not elements of the offense; thus, unanimity is required only as to finding that defendant committed two or more acts of sexual abuse, not as to which specific acts he committed); *Pollock*, 405 S.W.3d at 405 (same); *McMillian v. State*, 388 S.W.3d 866, 871-72 (Tex. App.—Houston [14th Dist.] 2012, no pet.) ("The commission of two or more acts of sexual abuse over a specified time period—that is, the pattern of behavior or

---

[2] Further, at the time the defendant committed each act of sexual abuse, the defendant must have been seventeen years of age or older and the victim was a child younger than fourteen years of age, regardless whether the defendant knew the age of the victim at the time of the offense. *See* Tex. Penal Code § 21.02(b). For purposes of this offense, an "act of sexual abuse" includes indecency with a child and aggravated sexual assault. *See id.* § 21.02(c)(2), (4). A defendant commits indecency with a child if, as is relevant here, he touches a child on any part of the child's genitals or causes the child to touch his genitals. *See id.* § 21.11(a), (c). A defendant commits aggravated sexual assault if, as is relevant here, the defendant causes his sexual organ to contact the sexual organ of a child under fourteen years of age. *Id.* § 22.021(a).

the series of acts—is the element as to which the jurors must be unanimous in order to convict.").

Appellant urges that the time frames in the charge authorized a conviction for offenses committed fewer than thirty days apart. We disagree. The charge's abstract portion instructed the jury as follows:

> Our law provides that a person commits an offense *if during a period that is 30 or more days in duration, the person commits two or more acts of sexual abuse*, regardless of whether the acts of sexual abuse are committed against one or more victims; and, at the time of the commission of each of the acts of sexual abuse, the person was 17 years of age or older and the victim is a child younger than 14 years of age. . . .

> In order to find the defendant guilty of the offense of continuous sexual abuse of a young child, you are not required to agree unanimously on which specific acts of sexual abuse were committed by the defendant or the exact date when those acts were committed. *However, in order to find the defendant guilty of the offense of continuous sexual abuse of a young child, you must agree unanimously that the defendant, during a period that is 30 or more days in duration, committed two or more acts of sexual abuse.*

(Emphases added). Additionally, the charge's application portion instructed the jury that, to convict appellant, they must find that appellant "on or about . . . August 26, 2013 continuing through August 2, 2016, did then and there unlawfully, *during a period of thirty or more days in duration*, commit at least two acts of sexual abuse . . . ." (emphasis added).

Appellant contends that the above language is improper and that the trial court should have added language to the application portion instructing the jury that "at least two of those acts were separated by at least 30 days." The jury charge language upon which appellant relies, however, tracks the relevant portions of Penal Code section 21.02 almost verbatim. The instruction clearly provided that two or more

6

acts of sexual abuse, if the jury found they occurred, must have occurred during a period thirty or more days in duration to support a conviction, and that the jury must unanimously so find. Contrary to appellant's assertions in his brief, the jury could not have convicted appellant under this charge if they "determined only that the defendant committed multiple acts of sexual abuse on a single day" during the applicable period of August 2013 to August 2016. Instead, according to the charge, jurors could only convict if these acts of sexual abuse occurred during a period of thirty or more days in duration—i.e., the individual acts of sexual abuse—whichever ones the individual jurors believed happened—necessarily must have occurred thirty or more days apart. *See* Tex. Penal Code § 21.02(d).

In sum, the charge's language tracks the statutory language and could have no "variable meaning in the eyes of the jury." *Cf. Navarro*, 469 S.W.3d at 698-99 (explaining that, although generally, a charge tracking statutory language is not error, "the jury must understand which law to apply, and the wording of a statute may not be enough . . . . if the statutory text on which it is based has a variable meaning in the eyes of the jury"). The charge did not authorize a non-unanimous verdict in the respect appellant contends, and we overrule appellant's first issue.

## B.     Outcry Witnesses

In issue two, appellant contends that the trial court erred in allowing two outcry witnesses to testify as to a single charged offense. Appellant focuses his complaint on the testimony of the second outcry witness, CAC forensic interviewer Ayrial Diop, and he does not challenge the admission of Officer Tuzun's testimony.

Texas Code of Criminal Procedure article 38.072 permits the State, in certain cases involving crimes against children or disabled persons, to present the complainant's out-of-court statements describing the offense. *See* Tex. Code Crim. Proc. art. 38.072. The complainant's out of court statement is commonly referred to

7

as an "outcry," and a witness who presents such statements is called an "outcry witness." *See Sanchez v. State*, 354 S.W.3d 476, 484 (Tex. Crim. App. 2011). Before an outcry witness testifies, the trial court must hold a hearing outside the jury's presence and determine whether the outcry is reliable, based on the time, circumstances, and content of the statement. *Id.* at 484-85; *see also* Tex. Code Crim. Proc. art. 38.072 § 2(b)(2).

Before Diop testified, the trial court conducted the requisite hearing outside the jury's presence as to her anticipated outcry testimony. During the hearing, appellant objected that Diop's testimony was unreliable.[3] On appeal, however, appellant does not re-urge the objection asserted below, but rather contends that the state is allowed only one outcry witness for each charged offense.[4] Because appellant's trial objection does not comport with the issue raised on appeal, it presents nothing for our review. *See, e.g.*, *Hallmark v. State*, 541 S.W.3d 167, 171 (Tex. Crim. App. 2017) (when complaint on appeal does not comport with trial objections, nothing is presented for appellate review); *Lovill v. State*, 319 S.W.3d 687, 691-92 (Tex. Crim. App. 2009) (explaining that complaint is not preserved for appeal when "the legal basis of the complaint raised on appeal varies from the complaint made at trial").

---

[3] Counsel stated: "There has been no particular showing of reliability in this case that it's a fair outcry and no, I guess, corroboration that would lend reliability to this outcry. It's made in a formal setting where — by a trained professional extracting information. It was not the type of outcry that you have when a person make a spontaneous statement to a person who is not such a trained professional. And for that reason, we would oppose it."

[4] The state is not so limited. *See Lopez v. State*, 343 S.W.3d 137, 140 (Tex. Crim. App. 2011) ("Hearsay testimony from more than one outcry witness may be admissible under article 38.072 only if the witnesses testify about different events. There may be only one outcry witness per event."); *see also Rosales v. State*, 548 S.W.3d 796, 806-07 (Tex. App.—Houston [14th Dist.] 2018, pet. ref'd) ("More than one outcry witness may testify if each witness testifies regarding different events."). The rule appellant suggests could present particular obstacles in the context of offenses like the present one, which require evidence of at least two acts of sexual abuse.

We overrule appellant's second issue.

## C.     Admission of Identification Evidence

In issue three, appellant contends that the trial court erred by allowing the doctor who examined Karen to testify about Karen's hearsay statements identifying appellant as her abuser.

Dr. Lauren Burge testified about Karen's medical examination following Karen's outcry. The trial court also admitted a report briefly summarizing Karen's report of molestation, in which Karen identified appellant as her abuser. Before Burge testified, appellant objected to admitting the part of the report identifying appellant as the abuser. When Burge began to testify, appellant objected that Karen's identification of him was inadmissible hearsay that violated his right to confrontation.

We review a trial court's evidentiary rulings for an abuse of discretion. *Gonzalez v. State*, 544 S.W.3d 363, 370 (Tex. Crim. App. 2018); *Neale v. State*, 525 S.W.3d 800, 809 (Tex. App.—Houston [14th Dist.] 2017, no pet.). Generally, hearsay—a statement not made by the declarant while testifying at trial that a party offers into evidence for the truth of the matter asserted—is not admissible. *See* Tex. R. Evid. 801(d), 802. However, statements made for medical diagnosis or treatment are exceptions to the hearsay rule and are not excluded, regardless whether the declarant is available as a witness. *See* Tex. R. Evid. 803(4). The erroneous admission of hearsay is non-constitutional error subject to harmless error review under Texas Rule of Appellate Procedure 44.2(b). *See Linney v. State*, 401 S.W.3d 764, 780 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd). The improper admission of evidence is harmless error if the same or similar evidence is properly admitted elsewhere at trial. *See id.* (citing *Brooks v. State*, 990 S.W.2d 278, 287 (Tex. Crim. App. 1999)).

Here, Karen identified appellant as the perpetrator of the sexual abuse in her trial testimony and through both of her properly admitted outcries. Thus, the jury heard ample evidence from which it could have found beyond a reasonable doubt that appellant sexually abused Karen. The defense never made identity an issue, nor did any evidence indicate that Karen was confused as to the perpetrator's identity. Because appellant's identity as Karen's abuser was established by other properly admitted evidence, any error in admitting the complained-of statement was harmless. *See id.*

We overrule appellant's third issue.

## D. State's Closing Argument

In appellant's final issue, he contends the trial court erred in denying his motion for mistrial. During the State's closing argument, the prosecutor told the jury that he believed Karen was telling the truth, and he would not have brought the case to trial if he did not believe so.[5] Appellant objected immediately to this statement, and the trial court sustained the objection and instructed the jury to disregard. Appellant moved for a mistrial, and the trial court denied his motion.

When, as here, a trial court sustains an objection and instructs the jury to disregard but denies a defendant's motion for mistrial, the issue is whether the trial court abused its discretion in denying the mistrial. *See Hawkins v. State*, 135 S.W.3d 72, 76-77 (Tex. Crim. App. 2004). To determine whether the trial court abused its discretion in denying appellant's motion for mistrial, we balance the following factors: (1) the severity of the misconduct—i.e., the magnitude of the prejudicial effect of the prosecutor's remarks; (2) the measures adopted to cure the

---

[5] Such a statement is improper because it injects the prosecutor's personal opinion into statements made to the jury. *See, e.g.*, *Beltran v. State*, 99 S.W.3d 807, 811-12 (Tex. App.— Houston [14th Dist.] 2003, pet. ref'd).

misconduct—i.e., the efficacy of any instructions by the judge; and (3) the certainty of conviction absent the misconduct—i.e., the strength of the evidence supporting the conviction. *Archie v. State*, 340 S.W.3d 734, 739 (Tex. Crim. App. 2011); *Hawkins*, 135 S.W.3d at 77. As to the second factor, generally a trial court's prompt instruction to disregard will cure any error associated with improper closing argument, "unless it appears the argument was so clearly calculated to inflame the minds of the jury or is of such a damning character as to suggest it would be impossible to remove the harmful impression from the juror's minds." *Crayton v. State*, 463 S.W.3d 531, 535 (Tex. App.—Houston [14th Dist.] 2015, no pet.) (citing *Logan v. State*, 698 S.W.2d 680, 683-84 (Tex. Crim. App. 1985)).

First, to the extent the prosecutor expressed his opinion that he believed Karen, this statement was brief and constituted only a small part of the State's argument; thus, it was not particularly severe misconduct.

Second, considering the curative measures adopted, the trial court promptly instructed the jury to disregard the prosecutor's comment. In cases involving direct statements of personal belief as to the credibility of a witness, instructions to disregard are considered effective.[6] This is not an instance where it appears the

---

[6] *See, e.g., McDonald v. State*, 148 S.W.3d 598, 603 (Tex. App.—Houston [14th Dist.] 2004), *aff'd by* 179 S.W.3d 571 (Tex. Crim. App. 2005) (prosecutor's statement during closing argument that child complainant was "very believable" was cured by instruction to disregard); *Nauert v. State*, 838 S.W.2d 328, 329-30 (Tex. App.—Austin 1992, pet. ref'd) (per curiam) (instruction to disregard cured harm from prosecutor's suggestion that jury should believe witnesses because prosecutors and investigators believed her); *cf. also Gardner v. State*, 730 S.W.2d 675, 697-98 (Tex. Crim. App. 1987) (harm from prosecutor's closing statements to jury that it should defer to credibility determinations made by certain "experienced" witnesses was cured by trial court's instruction to disregard); *Fowler v. State*, 500 S.W.2d 643, 644 (Tex. Crim. App. 1973) (noting that, if trial court had sustained objection and instructed jury not to consider prosecutor's statements during closing argument that he would not "prosecute a man that [he did not] feel in [his] own heart is guilty," "the error might not have resulted in reversal"); *Williams v. State*, 417 S.W.3d 162, 172-73 (Tex. App.—Houston [1st Dist.] 2013, pet. ref'd) (holding that prejudice from prosecutor's statement to venire that he would dismiss case if defendant were not guilty was curable by instruction); *Marles v. State*, 919 S.W.2d 669, 672 (Tex. App.—San Antonio

argument was "so clearly calculated to inflame the minds of the jury or is of such a damning character as to suggest it would be impossible to remove the harmful impression from the juror's minds." *Crayton*, 463 S.W.3d at 535. Given the timing of the objection and immediate instruction to disregard, we believe the present matter is like the many cases holding a curative instruction effective.

Turning to the third factor, we consider the certainty of conviction absent the misconduct. As discussed above, Karen testified that appellant began touching her vagina when she was nine years old; this behavior, as well as other types of behavior including forcing Karen to touch appellant's penis, continued over the next several years. A child sexual abuse victim's uncorroborated testimony is sufficient to support a conviction for continuous sexual abuse of a young child. *See* Tex. Code Crim. Proc. art. 38.07(a); *Garner v. State*, 523 S.W.3d 266, 271 (Tex. App.—Dallas 2017, no pet.). Karen told her friend Dorinda about the abuse while it was occurring, and she provided details concerning the abuse during her outcries. There can be no doubt that the case against appellant was strong.

In sum, none of the above-described factors indicate that the trial court abused its discretion in denying appellant's motion for mistrial. *Cf. McDonald*, 148 S.W.3d at 603; *Nauert*, 838 S.W.2d at 329-30.

For the foregoing reasons, appellant's fourth issue is overruled.

---

1996, pet. ref'd) (any error from detective's comment that boys "appeared truthful" and she found them "credible" was cured by trial court's instruction to disregard).

## Conclusion

Having overruled each of appellant's issues, we affirm the trial court's judgment.

/s/    Kevin Jewell
        Justice

Panel consists of Justices Christopher, Jewell, and Hassan.

Do Not Publish — Tex. R. App. P. 47.2(b).