**Affirmed and Memorandum Opinion filed October 29, 2020.**



**In The**

# Fourteenth Court of Appeals

### NO. 14-19-00365-CR

**ALVIS JACKSON, III, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 26th District Court
Williamson County, Texas
Trial Court Cause No. 16-0850-K26**

## M E M O R A N D U M   O P I N I O N

Appellant Alvis Jackson, III, appeals his conviction for aggravated sexual assault committed with a deadly weapon. In the first of two issues, appellant argues that the trial court erred in admitting the complainant's sexual assault examination report, which according to appellant contained inadmissible hearsay and was unfairly prejudicial. Second, appellant argues that the trial court erred in denying a mistrial after a witness referred to appellant's previous incarceration in violation of a limine order. We affirm the judgment.

## Background

A Williamson County grand jury indicted appellant on one count of aggravated sexual assault, during which appellant used or exhibited a deadly weapon. Appellant pleaded not guilty.

Prior to trial, appellant filed a motion in limine to exclude reference to the details of a previously outstanding and unrelated warrant for appellant's arrest. During the limine hearing, the trial judge indicated that she would allow the State to elicit testimony regarding the existence of the warrant, but not the details of the charge. The court also granted appellant's motion in limine regarding evidence of appellant's unrelated convictions occurring prior to the events of this case.

The case proceeded to trial before a jury, where the following facts were established. The complainant—we refer to her as "Vicky"—and appellant previously were married and had a child together. After Vicky learned appellant had engaged in an extramarital affair, the couple separated but remained in contact to share parenting responsibilities. Vicky testified that she had sexual intercourse with appellant after their separation and that appellant often stayed at Vicky's home. Vicky also testified that appellant often expressed anger toward her by throwing things against the wall, breaking her phone, and in one instance grabbing her by the throat. Appellant asked Vicky for money, and she occasionally obliged. However, Vicky refused appellant's repeated requests for $7,000 to pay bail on the outstanding warrant.

On the night in question, appellant followed Vicky home after a party. Appellant asked Vicky for bail money and to have sex. According to Vicky, appellant told her "[t]hat he would go away for a long time" if she did not give him the bail money and that he "wanted to be a family." Vicky refused both requests. Appellant left but later returned, and Vicky let appellant into the house.

2

Vicky sat on the couch with appellant, who then "yelled at [Vicky], that he only wanted [Vicky] to do one thing, and [she] couldn't do it. And then he brought out -- he brought out a knife from his back." Vicky started to get up from the couch, and appellant asked, "Do you want me to gut you?" Vicky yelled for help, but appellant covered her mouth with his hands. Vicky feared that appellant would hurt her with the knife or kill her.

Appellant then had sexual intercourse with Vicky. Vicky testified, "[I]t was at this point where I decided that I was just going to have to take it because I couldn't run because then my baby would stay. (Crying) . . . Either he was going to get me or hurt me more, or if I ran, then my daughter would stay with him, and I didn't know what he would do to her."

After appellant left the house, Vicky called 911. The first responding officer, Officer Shannon Davis, testified about obtaining an account of the assault from Vicky. As discussed more below, during his testimony Officer Davis referred to appellant's previous incarceration, prompting an objection from appellant. The trial court instructed the jury to disregard Officer Davis's statement and denied appellant's subsequent motion for mistrial.

After speaking with police at her home, Vicky left to undergo a medical evaluation. Herlinda Ramas, a forensic nurse and certified sexual assault nurse examiner ("SANE"), testified that she performed a sexual assault examination on Vicky. Ramas obtained a narrative history of the assault from Vicky, conducted a physical examination of Vicky's body, and collected evidence. The State offered the medical forensic examination report ("SANE report") Ramas created during Vicky's examination. Appellant objected to the report, arguing that it was hearsay and unfairly prejudicial. The trial court overruled both objections.

3

The jury found appellant guilty of the offense as charged in the indictment. After appellant pleaded true to two prior convictions for enhancement purposes, the jury assessed punishment at confinement for life. Appellant timely appealed.

## Analysis[1]

### A.     Admission of the SANE report

In his first issue, appellant challenges the trial court's admission of the SANE report over his hearsay and unfair prejudice objections.

We review a trial court's ruling to admit evidence under an abuse-of-discretion standard. *Gonzalez v. State*, 544 S.W.3d 363, 370 (Tex. Crim. App. 2018). We will uphold the trial court's ruling unless it is outside the zone of reasonable disagreement. *Id.* We will uphold an evidentiary ruling if it is correct on any theory of law applicable to the case. *Henley v. State*, 493 S.W.3d 77, 93 (Tex. Crim. App. 2016).

> 1.     *Any error in admitting the SANE report over a hearsay objection was harmless*.

Hearsay is a statement, other than one made by the declarant while testifying at a trial, offered in evidence to prove the truth of the matter asserted. Tex. R. Evid. 801(d). Hearsay is generally inadmissible except as provided by statute, the rules of evidence, or other rules prescribed under statutory authority. Tex. R. Evid. 802. An exception to the hearsay rule applies to any statement that: "(A) is made for—and is reasonably pertinent to—medical diagnosis or treatment; and (B) describes medical history; past or present symptoms or sensations; their inception; or their general cause." Tex. R. Evid. 803(4). To establish this "medical treatment

---

[1] The Supreme Court of Texas transferred this case to our court from the Third Court of Appeals. *See* Tex. Gov't Code § 73.001. We are unaware of any conflict between Third Court of Appeals precedent and that of this court on any relevant issue. *See* Tex. R. App. P. 41.3.

exception" applies, the proponent must show that (1) the out-of-court declarant was aware that the statements were made for purposes of medical diagnosis or treatment, and that proper diagnosis or treatment depended upon the veracity of the statements, and (2) the statements are pertinent to diagnosis or treatment, that is, it was reasonable for the care provider to rely on the statements in diagnosing or treating the declarant. *Taylor v. State*, 268 S.W.3d 571, 588-89, 591 (Tex. Crim. App. 2008); *Faglie v. State*, No. 03-17-00281-CR, 2019 WL 847812, at *1 (Tex. App.—Austin Feb. 22, 2019, no pet.) (mem. op., not designated for publication).

The improper admission of hearsay testimony is non-constitutional error that is harmless unless the error affected appellant's substantial rights. *See* Tex. R. App. P. 44.2(b); *Garcia v. State*, 126 S.W.3d 921, 927 (Tex. Crim. App. 2004). An error is harmless if we are reasonably assured that the error did not influence the verdict or had only a slight effect. *See Garcia*, 126 S.W.3d at 927; *Shaw v. State*, 329 S.W.3d 645, 653 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd). The improper admission of evidence is not reversible error if the same or similar evidence is admitted without objection at another point in the trial. *See Mayes v. State*, 816 S.W.2d 79, 88 (Tex. Crim. App. 1991); *Shaw*, 329 S.W.3d at 653; *Trevino v. State*, 218 S.W.3d 234, 240 (Tex. App.—Houston [14th Dist.] 2007, no pet.).

Appellant focused his hearsay objection on statements in the SANE report that referenced appellant brandishing a knife and placing his hand over Vicky's mouth. Regarding those facts, the SANE report included the following statements attributed to Vicky, which were read to the jury:

> . . . [H]e came and knocked on the door, and I let him in. . . . He said he wanted to talk, and I went to the living room and sat on the couch, and he started yelling at me, yelling that all he wanted was one night to be a family, and I couldn't give him

5

that one night. I told him that he could lay with our daughter if he wanted to, and he said, quote, no, I wanted you to be my wife one more night, end quote. Or one last night . . . I don't know. **Then, he pulled out a knife and I just asked what are you doing?** I am the mother of your child. And ummm, I'm not sure what he said exactly, but something to the effect to shut me up . . . like, I didn't want to talk earlier, but I want to talk now, no! And he told me . . . I'm not sure on the order . . . but he told me to strip my clothes off. I think I forgot. . . . **When I saw he was serious with a knife, I started yelling for help, and that's what he got me by my mouth . . . like to cover my mouth.** I'm confused on that part. I don't remember if he -- no, no, yeah, he told me to strip. I wouldn't, and then he got me, turned me around and pulled my pants and my underwear down. And I just started sobbing, like why are you doing this? I just wanted you to love me. Why did you cheat on me? And then he started crying, and everything from that point on was just to pacify him. He kept telling me to hold him. His life was over. He was saying, quote, they are going to kill me, end quote. Um, I don't know how, but eventually he said to go to the room, the guest room. . . . I laid down, and he put the condom on, and he penetrated me. And I just pretended to be okay with just regular sex. And he did oral sex. He would go back and forth. . . . And he finished. . . . And then he started talking about needing money for bails bonds and that I could help him, so I started going along with him that I was going to help him. And we talked about my daughter. And I told him just to stay calm, and he left, and I called 911. . . .

(Emphasis added).

Presuming without deciding that the trial court's admission of the SANE report under rule 803(4) was erroneous, appellant has not shown that the error affected a substantial right. Vicky testified, without objection, to the same details contained in the SANE report, including appellant's exhibition of the knife while threatening her, a description of the knife as a five-inch-long knife, and appellant's conduct of covering Vicky's mouth with his hand.

6

We conclude that any error in the admission of the SANE report was harmless and does not entitle appellant to relief. *See Rodriguez v. State*, No. 05-17-00854-CR, 2018 WL 2382106, at *1 (Tex. App.—Dallas May 25, 2018, no pet.) (mem. op., not designated for publication) (even if challenged statements were hearsay and not admissible under rule 803(4), admission was harmless error when substantially same evidence was admitted through other testimony without objection); *Vasquez v. State*, No. 05-16-00675-CR, 2017 WL 1684638, at *4 (Tex. App.—Dallas May 2, 2017, no pet.) (mem. op., not designated for publication) (same); *Alizadeh v. State*, No. 01-07-00604-CR, 2009 WL 469558, at *5 (Tex. App.—Houston [1st Dist.] Feb. 26, 2009, pet. ref'd) (mem. op., not designated for publication) (same).

2.  *The trial court did not abuse its discretion is overruling appellant's rule 403 objection.*

Next, we consider appellant's rule 403 objection to parts of the same report. Appellant contends that specific statements in the SANE report "that indicated Appellant was distraught, that he thought his life was over, that he needed bail money, etc.," should not have been admitted because their probative value was substantially outweighed by the risk of unfair prejudice. *See* Tex. R. Evid. 403.

Rule 403 provides: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." *Id.* Rule 403 favors the admission of relevant evidence, and we presume that the probative value of relevant evidence exceeds any danger of unfair prejudice. *See Hammer v. State*, 296 S.W.3d 555, 568 (Tex. Crim. App. 2009); *Shuffield v. State*, 189 S.W.3d 782, 787 (Tex. Crim. App. 2006). Under rule 403, evidence must be excluded only

7

when there is a clear disparity between the degree of prejudice of the offered evidence and its probative value. *Hammer*, 296 S.W.3d at 568.

As the Court of Criminal Appeals has explained, the fact that evidence may be detrimental does not render it unfairly prejudicial:

> Evidence is unfairly prejudicial only when it tends to have some adverse effect upon a defendant beyond tending to prove the fact or issue that justifies its admission into evidence. The prejudicial effect may be created by the tendency of the evidence to prove some adverse fact not properly in issue or unfairly to excite emotions against the defendant.

*Casey v. State*, 215 S.W.3d 870, 883 (Tex. Crim. App. 2007) (internal citations omitted). In undertaking a rule 403 analysis, we

> must balance (1) the inherent probative force of the proffered item of evidence along with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted.

*Gigliobianco v. State*, 210 S.W.3d 637, 641-42 (Tex. Crim. App. 2006).

The challenged evidence was relevant to explaining the context of events leading up to the assault, including appellant's motive or state of mind on the night of the assault. *See Shubert v. State*, No. 07-19-00117-CR, 2020 WL 3468159, at *7 (Tex. App.—Amarillo June 19, 2020, no pet. h.) (mem. op., not designated for publication) ("The probative value of the complained-of testimony substantially outweighed any 'potential to impress the jury in an irrational way,' because the testimony primarily dealt with the condition of Appellant's state of mind at or around the time of the killing, as opposed to bad acts or similar misconduct.")

(quoting Tex. R. Evid. 403). Part of the State's burden was to prove that appellant acted intentionally or knowingly, and this evidence was therefore probative of appellant's state of mind on the night in question. *See* Tex. Penal Code § 22.021 (elements of aggravated sexual assault). According to Vicky's later testimony, appellant said, "he wanted to be a family" and "he only wanted [Vicky] to do one thing, and [she] couldn't do it." The challenged assertions that appellant was crying, felt like his life was over, and needed bail money—all indicative of appellant's conduct or words occurring contemporaneously with, or shortly before, the assault—are some evidence from which the jurors could determine appellant's culpability in committing the assault against Vicky after he pulled out a knife and Vicky called for help. *See, e.g.*, *Cargill v. State*, No. AP-76,819, 2014 WL 6477109, at *7 (Tex. Crim. App. Nov. 19, 2014) (mem. op., not designated for publication) (testimony regarding appellant's interactions with complainant were more probative than prejudicial, and State needed the evidence because it did not have direct evidence of appellant's state of mind or intent) (citing *Gigliobianco*, 210 S.W.3d at 641). Vicky did not otherwise testify that appellant was distraught or upset or that appellant said his life was over. This evidence appears only in the SANE report. The first two *Gigliobianco* factors regarding probity and the State's need for the evidence weigh in favor of admission.

Against this, we must balance several other factors that, if met, could weigh in favor of exclusion if there exists a "clear disparity" between the degree of prejudice and the evidence's probative value. *Hammer*, 296 S.W.3d at 568; *Gigliobianco*, 210 S.W.3d at 641-42. Appellant, however, does not explain how the admission of evidence that he was distraught, felt like his life was over, and needed bail money would prove a fact not at issue or would unfairly excite the jurors' emotions against him with respect to the charged offense. *See Casey*, 215

S.W.3d at 883. And there is no indication on this record that the particular facts cited were of such a nature as to inflame the minds of the jurors. *Machina v. State*, No. 10-18-00156-CR, 2020 WL 1183157, at *6 (Tex. App.—Waco Mar. 11, 2020, pet. ref'd) ("And finally, there is no indication in this record that the complained-of evidence improperly inflamed the passions of the jury such that a decision was rendered on an improper basis."). Thus, appellant has not shown that any of the remaining *Gigliobianco* factors weigh in favor of exclusion. *See Gigliobianco*, 210 S.W.3d at 641-42.

On this record, we cannot say that there is a "clear disparity" between the danger of unfair prejudice posed by the complained-of evidence and its probative value. *Hammer*, 296 S.W.3d at 568. Thus, appellant has not shown that the trial court abused its discretion in admitting the challenged evidence over his rule 403 objection. *See Daigger v. State*, No. 03-04-00666-CR, 2006 WL 1865097, at *4 (Tex. App.—Austin July 7, 2006, pet. ref'd) (mem. op., not designated for publication) (rejecting appellant's contention that admission of evidence encouraged jurors to act on emotion and fear); *accord also Exezidis v. State*, No. 14-17-00087-CR, 2018 WL 1278503, at *6 (Tex. App.—Houston [14th Dist.] Mar. 13, 2018, pet. ref'd) (mem. op., not designated for publication) (in ineffective-assistance context, appellant failed to show that trial court would have erred in overruling a rule 403 objection when appellant failed to explain how prejudice outweighed evidence's probative value and brief offered only conclusory assertion that testimony was "unduly prejudicial"). Accordingly, we overrule his first issue.

## B.    Motion for mistrial

Officer Shannon Davis was the first officer to arrive on the scene in response to Vicky's 911 call. Officer Davis described his initial encounter with Vicky,

including obtaining an account of the assault. The prosecutor asked Officer Davis, "Did [Vicky] give you any information about [appellant] wanting to be, quote, a family?" Officer Davis responded, "[Vicky] stated that he had warrants out for his arrest currently from Travis County, and he was afraid of going back to prison so he wanted -- . . ."

Appellant objected and both counsel approached the bench. Appellant's counsel told the judge, "I think -- I think the witness should have been instructed to avoid any talk about prison as we have been discussing all morning, and it was my understanding that the witness was going to be told to that effect," in accordance with the trial court's limine ruling. The prosecutor responded that he did not realize what Officer Davis was going to say but that he had told Officer Davis not to refer to appellant's previous incarceration.

The trial judge asked appellant's attorney, "What's your request? I can simply instruct the jury to disregard the last statement." Appellant's counsel said, "Yes. That's fine." The judge instructed the jury to disregard Officer Davis's last statement. Appellant then moved for a mistrial, which the judge denied.

On appeal, appellant argues that the trial court abused its discretion by denying the motion for mistrial. A mistrial is a device used to halt trial proceedings when error occurring during trial is so prejudicial that expenditure of further time and expense would be wasteful and futile. *Young v. State*, 283 S.W.3d 854, 878 (Tex. Crim. App. 2009). The propriety of a mistrial depends on the facts of each case and is appropriate only in extreme circumstances "for a narrow class of highly prejudicial and incurable errors." *Ocon v. State*, 284 S.W.3d 880, 884 (Tex. Crim. App. 2009). A mistrial therefore should be "exceedingly uncommon," *Hudson v. State*, 179 S.W.3d 731, 738 (Tex. App.—Houston [14th Dist.] 2005, no pet.), and granted "only when residual prejudice remains after less drastic

alternatives are explored." *Ocon*, 284 S.W.3d at 884-85 (internal quotation omitted). A denial of a motion for mistrial is reviewed under an abuse of discretion standard, and we must uphold a trial court's ruling if it was within the zone of reasonable disagreement. *Coble v. State*, 330 S.W.3d 253, 292 (Tex. Crim. App. 2010); *Ladd v. State*, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999).

Generally, a trial court's prompt instruction to disregard reference to extraneous offenses will cure any error associated with that testimony, unless it appears the evidence was so clearly calculated to inflame the minds of the jury or is of such a damning character as to suggest it would be impossible to remove the harmful impression from jurors' minds. *Kemp v. State*, 846 S.W.2d 289, 308 (Tex. Crim. App. 1992); *see also Crayton v. State*, 463 S.W.3d 531, 535 (Tex. App.—Houston [14th Dist.] 2015, no pet.) (citing *Logan v. State*, 698 S.W.2d 680, 683-84 (Tex. Crim. App. 1985)). A court should review the particular facts of the case in determining whether a given error requires a mistrial. *See Ladd*, 3 S.W.3d at 567.

In several cases involving extraneous or bad acts evidence, courts have held a curative instruction sufficient to render objectionable testimony harmless. *See, e.g.*, *Kemp*, 846 S.W.2d at 308 (holding State's witness's reference to defendant's prior incarceration rendered harmless by curative instruction); *Gardner v. State*, 730 S.W.2d 675, 696-97 (Tex. Crim. App. 1987) (holding witness's testimony that, when defendant was in the penitentiary, he had stomach problems attributable to drug withdrawal was not so inflammatory as to require a mistrial); *Barney v. State*, 698 S.W.2d 114, 124-25 (Tex. Crim. App. 1985) (holding State's witness's answer that victim did not like defendant because "he was an ex-con" was improper reference to extraneous offense but cured by jury instruction); *Campos v. State*, 589 S.W.2d 424, 427-28 (Tex. Crim. App. 1979) (holding witness's testimony, during State's cross-examination, that defendant was arrested and jailed on an

12

extraneous offense was cured by jury instruction); *Bledsoe v. State*, 21 S.W.3d 615, 624 (Tex. App.—Tyler 2000, no pet.) (holding detective's testimony, during questioning by State, that detective served warrant on defendant at county jail was cured by instruction when State did not solicit response or emphasize the testimony to the jury and detective did not elaborate on reasons for the incarceration).

We conclude the trial court did not err in denying appellant's motion for mistrial. Although Officer Davis's answer regarding appellant's prior incarceration was not responsive to the prosecutor's question of whether Vicky gave the officer information about appellant "wanting to be, quote, a family?" and violated the court's order in limine, the trial court gave an immediate curative instruction with appellant's approval. Because we presume the jury followed the court's instructions, *see Elizondo v. State*, 487 S.W.3d 185, 208 (Tex. Crim. App. 2016), the officer's unsolicited statement[2] was harmless. This is not an instance where it appears that the testimony was "so clearly calculated to inflame the minds of the jury or is of such a damning character as to suggest that it would be impossible to remove the harmful impression" from the minds of the jurors. *Crayton*, 463 S.W.3d at 535; *see also, e.g., Kemp*, 846 S.W.2d at 308 (holding State's witness's reference to defendant's prior incarceration rendered harmless by curative instruction).

We overrule appellant's second issue.

---

[2] *See Webb v. State*, No. 01-14-00174-CR, 2015 WL 5315332, at *5 (Tex. App.—Houston [1st Dist.] Sept. 10, 2015, pet. ref'd) (mem. op. on reh'g, not designated for publication).

## Conclusion

We affirm the trial court's judgment.

/s/ Kevin Jewell
Justice

Panel consists of Justices Christopher, Jewell, and Zimmerer.

Do Not Publish — Tex. R. App. P. 47.2(b).