**Affirmed and Memorandum Opinion filed July 11, 2024**



In The

# Fourteenth Court of Appeals

_____

### NO. 14-23-00104-CR

_____

**KENDRICK GREEN, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 184th District Court
Harris County, Texas
Trial Court Cause No. 1734706**

## MEMORANDUM OPINION

Appellant Kendrick Green appeals from his aggravated assault with a deadly weapon conviction in multiple issues. *See* Tex. Penal Code § 22.02. We affirm.

### BACKGROUND

Late one evening the complainant, Joel Valdez, went to Kroger to pick up groceries for his food truck business. While Valdez was inside the Kroger, footage from the parking lot security camera shows a silver Lexus Sport Utility Vehicle

(SUV) almost collide with a larger SUV near the parking lot entrance. The Lexus SUV stopped, and a female jumped out of the front passenger side. The female started running away from the Lexus SUV toward the Kroger store. A man briefly got out of the Lexus SUV and walked around the vehicle. The man got back into the Lexus SUV and quickly drove toward the female who had jumped out of the Lexus SUV and was now walking toward the Kroger. As the Lexus SUV approached the walking female, she changed directions and walked away. The Lexus SUV briefly went out of the view of the parking lot security camera as it turned and followed the walking female. The Lexus SUV passed by the walking female and parked next to a shopping cart receptacle. The female turned around and walked away from the Lexus SUV, eventually moving out of the view of the security camera. The male driving the Lexus SUV got out and followed the walking female. He also moved out of the view of the security camera. About a minute later, the security camera footage showed the driver re-enter the picture as he walked back toward the driver's side of the Lexus SUV where he may, or may not, have re-entered the vehicle.

Out of the view of the Kroger security camera, Valdez exited the Kroger with his grocery cart. Valdez testified that, while he was walking toward his car, he saw a woman run past him. According to Valdez the unknown woman was "crying" and "hysterical." Valdez testified that he also saw and heard a man in the parking lot "screaming just random stuff." Valdez further testified that he did not involve himself with either the hysterical woman or the screaming man. Valdez instead continued walking toward his car. Valdez entered the view of the Kroger security camera. Valdez placed his groceries into the trunk of his car. Valdez then wheeled his empty grocery cart to the nearest cart receptacle, which happened to be located immediately beside the silver Lexus SUV. As Valdez walked back to

his car, he heard the driver of the Lexus SUV yell at him to not get in his car. Valdez ignored him and got into the driver's seat of his car.

Seconds later, while Valdez's car was still stationary, the Lexus SUV started moving. It drove down the lane of the parking lot toward the Kroger, u-turned, and then drove up the same lane of the parking lot where Valdez remained parked. The Lexus SUV pulled up next to the passenger side of Valdez's car. The driver of the Lexus SUV began "yelling out of his window at [Valdez]." According to Valdez, it "was very incoherent, just a lot of yelling, lot of profanity." Valdez decided to ignore it and started driving forward through the parking space in front of his car and then turned toward the front of the Kroger store. The Lexus SUV immediately followed Valdez's car and it quickly pulled up beside the driver's side of Valdez's car. At this point, only the rear ends of the two vehicles were visible in the security camera video footage. Valdez testified that he was angry at this point so he rolled down his window and asked the driver of the Lexus SUV, "What's your problem?" Valdez then asked "What did I do?" The driver responded, "You know what you did." After this brief exchange of words, the driver of the Lexus SUV fired numerous shots at Valdez. Valdez was hit several times, including in his back, left arm, and neck, which began bleeding profusely. Valdez "hit the gas" and drove away from the Lexus SUV. The Lexus SUV drove away from the Kroger. Valdez first drove to the Kroger gas station where he called 9-1-1. Valdez then drove back to the front of the Kroger store where he believed there would be lights and people. Kroger employees assisted Valdez until the Harris County Sheriff's deputies and an ambulance arrived.

George Grifno, an investigator with the Harris County Sheriff's Office Violent Crimes Unit, was the lead investigator in Valdez's shooting. Grifno was called out to the Kroger and arrived a short time after the shooting. Grifno

interviewed witnesses at the scene, including a female named Marsae Brown. As a result of those interviews Grifno identified appellant as a suspect in Valdez's shooting. Grifno had other investigators prepare photo lineups including appellant's photo.

A few hours after he was shot, while he was in the hospital, Valdez identified appellant through a photo lineup as the man who shot him. Valdez also identified appellant as the man who shot him during appellant's trial.

Investigators also linked appellant to the Kroger parking lot shooting through his wife's vehicle. State of Texas vehicle registration records established that Kameshia Hutchison, appellant's wife, owned a silver Lexus SUV. Hutchison's Lexus SUV matched the vehicle driven by the shooter on the Kroger parking lot security camera video. Grifno further testified that appellant was driving his wife's silver Lexus SUV during a previous traffic stop of that vehicle by police and also when he was arrested on the aggravated assault charge at issue in the present case.

During appellant's trial, the State sought to introduce a recording of a jailhouse telephone call between appellant and his wife. Whether this recording should be admitted into evidence led to lengthy bench discussions between the trial court, appellant's trial counsel, and the prosecutors. These discussions resulted in various redactions to the recording, State's Exhibit 26.

The State published the redacted State's Exhibit 26 to the jury. In the recording Kameshia Hutchinson, appellant's wife, described the news reports about the Kroger shooting—including that the shooter was part of a "domestic couple." Appellant replied, "Man, that's bullshit, man." Hutchinson then asked appellant: "Who was the girl, Kendrick?" Appellant replied that she was a girl he had met. Hutchinson confronted appellant about leaving the woman at Kroger and

appellant replied, "I told her to get the fuck gone; she was on some trip shit." When Hutchinson asked appellant why he would have the woman in his wife's car, appellant replied, "I don't know Kameshia. That was stupid." When the recording had been played for the jury, the State rested.

Appellant testified in his own defense. Appellant admitted that it was his voice on the jailhouse telephone call recording. Appellant denied any involvement in the Kroger parking lot shooting, claiming that he was at home alone when it occurred.

At the close of the evidence, the jury found appellant guilty as charged in the indictment. The jury assessed appellant's punishment at 20 years in prison and a $10,000 fine. This appeal followed.

## ANALYSIS

### I. The trial court did not abuse its discretion when it admitted evidence related to the initial identification of appellant as the suspected shooter.

Appellant argues in his first and third issues that the trial court abused its discretion when it allegedly admitted statements made by Marsae Brown at the scene of the shooting over his hearsay objections. We address these issues together.

#### A. Standard of review

We review a trial court's decision to admit evidence for an abuse of discretion. *Zuliani v. State*, 97 S.W.3d 589, 595 (Tex. Crim. App. 2003). A trial court abuses its discretion only if "the trial judge's decision was so clearly wrong as to lie outside that zone within which reasonable persons might disagree." *Cantu v. State*, 842 S.W.2d 667, 682 (Tex. Crim. App. 1992). If the trial court's evidentiary ruling is correct on any theory of law applicable to that ruling, we must

affirm the ruling. *Gomez v. State*, 380 S.W.3d 830, 836 n.9 (Tex. App.—Houston [14th Dist.] 2012, pet. ref'd) (citing *De La Paz v. State,* 279 S.W.3d 336, 344 (Tex. Crim. App. 2009)).

**B.** **The trial court did not abuse its discretion when it admitted Investigator Parojcic's and Investigator Grifno's testimony regarding their identification of appellant as a suspect.**

In his first issue, appellant appears to argue that the trial court abused its discretion when it admitted Investigator Nickolas Parojcic's testimony that, during the Kroger shooting investigation, Investigator Grifno had identified a possible suspect and had then instructed Parojcic to compile a photo lineup containing the suspect's photo to show to Valdez. Appellant lodged a hearsay objection when the prosecutor asked Parojcic "the name of the suspect that [he] was provided." The prosecutor responded that the information sought to be introduced was not being offered to prove the truth of the matter asserted, but was instead being used to explain what had been uncovered by the investigation. The trial court overruled appellant's objection. Parojcic then testified that appellant was identified as the suspected shooter. In his testimony Parojcic did not mention Marsae Brown or the name of any other witness who may have identified the alleged shooter. Despite this, appellant argues the trial court's decision violated the rule against hearsay. *See* Tex. R. Evid. 802. We disagree.

Hearsay is a statement made outside of court and offered into evidence to prove the truth of the matter asserted. Tex. R. Evid. 801(d); *Amador v. State*, 376 S.W.3d 339, 344 (Tex. App.—Houston [14th Dist.] 2012, pet. ref'd). "The Court of Criminal Appeals has concluded that if a statement is introduced to explain how a defendant became a suspect or how the investigation focused on a defendant, then the statement is not hearsay because it is not offered for the truth of the matter asserted." *Nickerson v. State*, 312 S.W.3d 250, 262 (Tex. App.—Houston [14th

Dist.] 2010, pet. ref'd) (citing *Dinkins v. State*, 894 S.W.2d 330, 347 (Tex. Crim. App. 1995)). Investigator Parojcic's testimony regarding the identification of a possible suspect fits within this rule. *See id.* at 263 ("If the State elicits testimony to explain how a defendant originally became a suspect, then the testimony is not hearsay because it is not [offered] for the truth of the matter asserted."). Accordingly, the trial court did not abuse its discretion when it overruled appellant's hearsay objection to Parojcic's testimony. *Id.* at 263.

Appellant attempts to avoid the investigative exception by arguing that *Dinkins* is distinguishable because there the defendant became a suspect when his name was found in an appointment book and on a patient application. In *Dinkins* a police officer testified that the defendant became a suspect because his name came up in an appointment book and a patient application. *Dinkins*, 894 S.W.2d at 347. The appointment book and patient application were admitted into evidence. *Id.* Dinkins, like appellant in the present appeal, argued that the trial court's admission of these documents violated the hearsay rule. *Id.* The Court of Criminal Appeals disagreed. It held that the admission of the two documents did not violate the hearsay rule because the "State tendered the appointment book and the application form to show how appellant became a suspect in the investigation." *Id.* The fact appellant's name first came up as a possible suspect from a witness rather than an exhibit does not make the present case distinguishable from *Dinkins*. In both cases the State used the information only to explain how the defendant became a suspect in the case, not to prove the defendant committed the crime.

In the remainder of his first and third issues, appellant complains about portions of Investigator Grifno's testimony. Appellant contends that the State's effort to have Grifno "testify that Marsae Brown said she was with [appellant] before they allegedly arrived at the Kroger, that she was upset and scared of

[appellant], and that she thought [appellant] shot someone at the Kroger" violated the hearsay rule. Appellant argues that the trial court therefore abused its discretion when it overruled his hearsay objections because the State failed to establish the excited utterance exception to the hearsay rule. *See* Tex. R. Evid. 803(2) (providing an exception to the hearsay rule for statements "relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused").

The following exchange occurred between the prosecutor and Grifno:

Prosecutor: Can you describe her [Brown's] demeanor as she was making the statement?

Grifno: She was - - she was visibly upset. She was shaken.

Prosecutor: And did she seem like she was visibly upset about something that had just occurred?

Grifno: Yes.

Prosecutor: And what did she tell you when she was in that - - when she appeared to be in that state, what did she tell you just occurred?

Grifno: She said she had ran [sic] into the Kroger into the lady's restroom and was hiding.

Prosecutor: What was the last part?

Grifno: Sorry. She was hiding in the women's restroom.

Only then did appellant lodge a hearsay objection, which the trial court overruled. The prosecutor then continued:

Prosecutor: And while she [Brown] was still under that same stress or appeared to be, what else did she say to you?

Grifno: She said she thought that the guy she was with just shot somebody.

Once again, appellant lodged a hearsay objection only after Grifno answered, which the trial court overruled.

Hearsay is a statement made outside of court and offered into evidence to prove the truth of the matter asserted. Tex. R. Evid. 801(d). Although hearsay is generally inadmissible, Texas Rule of Evidence 803 provides an exception for admitting excited utterances: statements "relating to a startling event or condition made while the declarant was under the stress of excitement that it caused." Tex. R. Evid. 803(2); *see Zuliani*, 97 S.W.3d at 595–96. There are three requirements for a statement to be an excited utterance: "(1) the statement must be the product of a startling occurrence that produces a state of nervous excitement in the declarant and renders the utterance spontaneous; (2) the state of excitement must still so dominate the declarant's mind that there is no time or opportunity to contrive or misrepresent; and (3) the statement must relate to the circumstances of the occurrence preceding it." *Kesaria v. State*, 148 S.W.3d 634, 642 (Tex. App.—Houston [14th Dist.] 2004), *aff'd*, 189 S.W.3d 279 (Tex. Crim. App. 2006). Generally, a trial court may rely on the contents of the statement itself, along with the declarant's appearance, behavior, and condition, to determine the occurrence of an exciting event and the declarant's personal perception of it. *Ross v. State*, 154 S.W.3d 804, 809 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd). The court may also consider the time elapsed and whether the statement was in response to a question. *Salazar v. State*, 38 S.W.3d 141, 154 (Tex. Crim. App. 2001). These factors, however, are not dispositive. *Zuliani*, 97 S.W.3d at 596. The critical determination is "whether the declarant was still dominated by the emotions, excitement, fear, or pain of the event" or condition at the time of the statement. *McFarland v. State*, 845 S.W.2d 824, 846 (Tex. Crim. App. 1992).

Assuming without deciding that appellant's objections were timely, we conclude the trial court did not abuse its discretion because the State laid sufficient predicate to establish the applicability of the excited utterance exception. *See Luna*

*v. State*, 268 S.W.3d 594, 604 (Tex. Crim. App. 2008) (stating that if a defendant fails to object until after an objectionable question has been asked and answered, and there is no legitimate reason for the delay, the objection is untimely and any claim of error is forfeited); *Moff v. State*, 131 S.W.3d 485, 489 (Tex. Crim. App. 2004) (stating that an objection must be timely, proper, and specific to preserve error). It was within the zone of reasonable disagreement for the trial court to conclude, based on Grifno's testimony, that Brown was still dominated by the emotions, excitement, fear, or pain caused by the events leading up to the Kroger shooting. *See Price v. State*, 502 S.W.3d 278, 285 (Tex. App.—Houston [14th Dist.] 2016, no pet.) ("Given the traumatic nature of the robbery, his girlfriend's testimony that Fraustro was 'hysterical' afterwards, Officer Cabrera's description of Fraustro as 'visibly upset' and 'shaking' at the time of the statements, and the relatively short time between the robbery and his statements, it was not outside the zone of reasonable disagreement for the trial court to conclude that Fraustro was still under the stress of the robbery when he made the statements."). Second, while appellant argued in the trial court that Brown was hiding in the bathroom at the time of the shooting and therefore did not see a startling event, there is no evidence in the record supporting that contention. Instead, the trial court could have concluded, based on Grifno's testimony, that Brown fled into the bathroom only after she had watched the shooting. Finally, there is no evidence in the record as to how much time had elapsed between the shooting and Grifno's arrival on the scene. The passage of time, however, is not determinative. Instead, the determining factor is whether the declarant was still under the stress of the event. Based on Grifno's testimony, the trial court could have reasonably determined that Brown was still dominated by the emotions, excitement, fear, or pain of the event at the time of her statement. *See McFarland*, 845 S.W.2d at 846. We overrule

appellant's first and third issues.[1]

## II. Investigator Grifno's testimony did not violate appellant's Confrontation Rights.

Appellant asserts in his second issue that the admission of Investigator Grifno's testimony recounting Brown's statements placing appellant at the scene of the shooting violated his confrontation rights under the Texas and United States Constitutions.[2] Because Brown's statements at the scene of the shooting were non-testimonial, we disagree.

The Sixth Amendment provides that in all criminal prosecutions, the accused shall have the right to be confronted by the witnesses against the accused. U.S. Const. amend. VI. In *Crawford v. Washington*, 541 U.S. 36, 51, (2004), the Supreme Court of the United States held that the Sixth Amendment right of confrontation applies not only to in-court testimony, but also to out-of-court statements that are testimonial in nature. *Langham v. State*, 305 S.W.3d 568, 576 (Tex. Crim. App. 2010) (citing *Crawford*, 541 U.S. at 51). In *Crawford* the Supreme Court did not extend this protection to non-testimonial hearsay. *Ford v. State*, 179 S.W.3d 203, 209 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd). The threshold question imposed by *Crawford*, then, is whether the proffered out-

[1] Because we have determined that the trial court did not abuse its discretion when it admitted Grifno's testimony, we need not reach appellant's arguments asserting that the State attempted to improperly "backdoor" hearsay into evidence. Even if the trial court abused its discretion when it overruled appellant's hearsay objections to these alleged backdoor attempts to admit hearsay evidence, we conclude appellant did not suffer any harm as a result. *See Brooks v. State*, 990 S.W.2d 278, 287 (Tex. Crim. App. 1999) (concluding that "any error in admitting the [hearsay] evidence was harmless in light of other properly admitted evidence proving the same fact").

[2] Because appellant has not provided any argument or authority that Texas's Constitution provides different or greater protections than its federal counterpart, we analyze his issue only under the United States Constitution. *See* Tex. R. App. P. 38.1; *Russeau v. State*, 171 S.W.3d 871, 881 (Tex. Crim. App. 2005); *Santacruz v. State*, 237 S.W.3d 822, 827 (Tex. App.—Houston [14th Dist.] 2007, pet. ref'd).

of-court statement is testimonial. *Lee v. State*, 418 S.W.3d 892, 895 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd). Whether a particular out-of-court statement is testimonial is a question of law. *Id.* at 895–96.

The Court of Criminal Appeals has summarized three kinds of testimonial statements: (1) "ex parte in-court testimony or its functional equivalent," i.e., "pretrial statements that declarants would reasonably expect to be used prosecutorially;" (2) "extrajudicial statements contained in formalized testimonial materials," such as affidavits, depositions, or prior testimony; and (3) "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." *Langham*, 305 S.W.3d at 576.

"A statement is more likely to be testimonial if the person who heard, recorded, and produced the out-of-court statement at trial is a government officer." *Davis v. State*, 169 S.W.3d 660, 667 (Tex. App.—Austin 2005), *aff'd* 203 S.W.3d 845 (Tex. Crim. App. 2006). For example, statements obtained pursuant to a police interrogation are testimonial. *Id.* at 666. Not all statements made to a police officer are testimonial, however. In *Spencer*, we determined that a victim's initial statements to police were not testimonial because they were made when the police arrived on the crime scene to assess and secure the scene, and they bore "no indicia of the formal, structured questions necessary for statements to be testimonial." *Spencer v. State*, 162 S.W.3d 877, 883 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd); *see Wilson v. State*, 296 S.W.3d 140, 147 (Tex. App.—Houston [14th Dist.] 2009, pet. ref'd) ("Stated differently, the information solicited from Baez were [sic] necessary to enable police to arrest the suspect and resolve the present emergency.") (internal quotations omitted).

The U.S. Supreme Court has further clarified what would be considered an

ongoing emergency that results in nontestimonial evidence. *Michigan v. Bryant*, 562 U.S. 344 (2011). In *Bryant*, the Court considered "a nondomestic dispute, involving a victim found in a public location, suffering from a fatal gunshot wound, and a perpetrator whose location was unknown at the time the police located the victim" an ongoing emergency resulting in nontestimonial evidence. *Id.* at 359. The Court observed that an ongoing emergency focuses the participants' attention on ending the threatening situation, and not on proving past events potentially relevant to a possible future criminal prosecution. *Id.* at 361. The Court made clear that there need not be a continuing threat to the original victim, but instead could be an ongoing threat to the public. *Id.* at 364. The Court continued that the questions the police asked at the scene, such as "what had happened, who had shot him, and where the shooting had occurred, were the exact type of questions necessary to allow the police to assess the situation, the threat to their own safety, and possible danger to the potential victim and to the public." *Id.* at 376 (internal quotations omitted). The Court concluded that "the initial inquiries in this case resulted in . . . nontestimonial statements" which did not violate the defendant's confrontation rights. *Id.* at 377. Finally, the Court confirmed that this is an objective inquiry because "it provides the most accurate assessment of the primary purpose of the interrogation." *Id.* at 360 (internal quotations omitted).

With the exception of the victim suffering from a fatal gunshot wound, we are presented with the exact same factual scenario here. Valdez, the complainant, had been shot and seriously wounded in an apparently random criminal act. The gunman had fled the scene in an automobile and was still at large. A visibly shaken and upset Brown had reported to Grifno that she believed the man she was with had just shot somebody. From an objective viewpoint, we conclude that both Brown, the declarant, and Grifno, the police investigator, were acting out of a

primary purpose of addressing an ongoing emergency not to establish facts for a future prosecution and therefore Brown's statements were nontestimonial. *See Amador v. State*, 376 S.W.3d 339, 343 (Tex. App.—Houston [14th Dist.] 2012, pet. ref'd) (concluding officer's testimony regarding victim's statements at robbery scene were not testimonial). We overrule appellant's second issue.

## III. Appellant did not preserve his fourth issue for appellate review.

As mentioned above, the State sought to introduce a recording of a telephone call between appellant and his wife made after appellant was in the Harris County Jail. The State called Deputy Lamon Ontivares of the Harris County Sheriff's Office as the sponsoring witness. Before Ontivares was asked any questions, a bench conference took place at the State's request. The State informed the trial court that Ontivares would "present the jail call." Appellant lodged hearsay and Rule 403 objections to portions of that recording. Defense counsel stated that he did "not have an issue with his client's statements coming in." The trial court told the State to redact certain portions of the recording. The State then brought in Valdez, the complainant, to testify while the redactions were carried out.

Later during the same trial day, the State offered what it represented was a redacted version of the recorded jailhouse telephone call into evidence. Appellant renewed his hearsay and Rule 403 objections to the redacted version. The trial court overruled the objections and admitted State's Exhibit 26, the jailhouse telephone call recording. The State began playing the recorded call for the jury. The trial court sua sponte interrupted the playing of the recording and called the parties to the bench. The trial court asked the attorneys about certain portions of the recorded call that the jury had just heard which the trial court believed should have been redacted. The jury was sent out of the courtroom and a lengthy discussion occurred where the parties and the trial court worked out the redactions.

Once all were satisfied with the portions of the recorded call that should be redacted the trial court told the prosecutor that she could "sit and listen to it, too. Right now, it's already been admitted. So, before it goes back to the jury, if you can make the redactions; and please play it for the Court before it goes back to the jury." The State responded that "it would be best if [defense counsel] got the redactions that you wanted us to do on the tape." The State then asked if appellant could cross-examine Ontivares, the trial then adjourn for the lunch break, giving the State time to perform the redactions. Then, after the lunch break, the redacted recording could be played for the jury. Both sides agreed to this procedure. At this point, with the jury still out of the courtroom, appellant's counsel asked: "[c]an we get an instruction from the Court to disregard what they have already heard and let them listen to it all over again?" The trial court responded "Okay." Defense counsel then asked to have the exhibit "stricken from the record - -[.]" The trial court sought clarification and defense counsel corrected that he was moving to strike "[j]ust the stuff about the relationship that came in that they already heard." The trial court asked for an exact line and defense counsel responded that he did not know an exact line and could not recall how it was phrased or exactly what appellant's wife had said. The trial court, still seeking clarification, stated "[t]he line that I have is that when I asked you-all to approach, it was when the defendant says, She came over one time to smoke and shit. But if you're saying you are fine with the weed part, then - -[.]" Defense counsel responded: "Okay. You're right. Okay. We will leave that alone." After further clarification on exactly which lines defense counsel wanted redacted, the jury was brought back into the courtroom. Defense counsel briefly cross-examined Ontivares about the mechanics of the jailhouse telephone call recording system. The trial then broke for lunch. After the lunch break, the State passed the witness and the trial ended for the day due to scheduling issues.

The next day the State asked to publish the redacted State's Exhibit 26. Appellant did not renew his request for an instruction to the jury to disregard the now-redacted portions of State's Exhibit 26 that the jury had previously heard. The State then played the redacted recording.

In his fourth issue, appellant argues that the trial court "undeniably erred" when it failed to instruct the jury to disregard portions of the recorded jailhouse telephone call that the trial court had ruled inadmissible and which the jury allegedly heard before the trial court sua sponte interrupted the playing of the recording for the jury. According to appellant's brief, the inadmissible part of the recording heard by the jury involved appellant's relationship with another woman who had come over to appellant's house to smoke.

We conclude appellant failed to preserve this issue for appellate review because he failed to renew his request before the redacted recording was played for the jury on the last day of the guilt/innocence phase of his trial. *See* Tex. R. App. P. 33.1(a)(1)(2)(B) (stating that to preserve error a party must object or make a motion and the trial court either ruled on the party's request or "refused to rule on the request, objection, or motion, and the complaining party objected to the refusal."). We overrule appellant's fourth issue.

## IV.	The trial court did not abuse its discretion when it denied appellant's motion for mistrial.

Appellant argues in his fifth issue that the trial court abused its discretion when it denied his motion for mistrial. Appellant's issue arises out of Investigator Grifno's testimony regarding the Kroger parking lot surveillance video. During his testimony Grifno consistently identified the driver of the Lexus SUV as appellant. Eventually, the prosecutor asked the following question:

Prosecutor:  And what is [appellant] doing?

Grifno:     As you can see, [appellant] is following [Valdez].   It looked like at one point he almost tried to hit him.

Appellant objected to Grifno identifying appellant as the driver of the Lexus SUV. A bench conference ensued and the trial court instructed the prosecutor to "ask a few more questions about how [Grifno] was able to make the nexus between the person in the video and the person who is in the courtroom today." The trial court then sustained appellant's objection.

The prosecutor then resumed questioning Grifno:

Prosecutor: And how were you able to determine that [appellant] was the driver of the vehicle?

Grifno:     The victim identified him.

Prosecutor: Did other witnesses place him on the scene?

Grifno:     Yes.

Defense:    Objection, hearsay.

Trial Court: That will actually be sustained.

Defense:    Move to strike.

Trial Court: You move to strike that statement.  Please disregard the statement that you just heard.

Defense:    Move for a mistrial.

Trial Court: That will be denied.

We review a trial court's denial of a motion for mistrial for an abuse of discretion. *Ocon v. State*, 284 S.W.3d 880, 884 (Tex. Crim. App. 2009); *Jackson v. State*, 495 S.W.3d 398, 421 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd). We view the evidence in the light most favorable to the trial court's ruling and will uphold the ruling if it falls within the zone of reasonable disagreement. *Ocon*, 284 S.W.3d at 884. A mistrial is an extreme remedy reserved for a narrow class of cases in which the error is highly prejudicial and incurable. *Id.*; *see Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004) ("Only in extreme

circumstances, where the prejudice is incurable, will a mistrial be required."). The grant of a mistrial is proper "when error is so prejudicial that expenditure of further time and expense would be wasteful and futile." *Ladd v. State*, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999). To determine whether a mistrial is warranted, we consider the prejudicial effect, any curative measures taken, and the certainty of conviction absent the prejudicial event. *Archie v. State*, 221 S.W.3d 695, 699 (Tex. Crim. App. 2007); *Crayton v. State*, 463 S.W.3d 531, 535 (Tex. App.—Houston [14th Dist.] 2015, no pet.) (citing *Hawkins*, 135 S.W.3d at 77).

On appeal, appellant argues that the prejudicial effect of the State's questions was severe because, in his view, the State used testimony that violated the hearsay rule as well as his right to confront the witnesses against him to initially identify appellant as the shooting suspect. We have already addressed and rejected appellant's issues arguing that the trial court abused its discretion by allowing testimony explaining how appellant was initially identified as the shooting suspect. We conclude the same reasoning applies here and persuades us that the trial court improperly sustained appellant's hearsay objection to the portion of Grifno's testimony quoted above. Grifno's testimony explaining why he referred to the driver of the Lexus SUV as appellant was based on information he learned through his investigation and also that he specifically learned from Brown, which was admissible through the excited utterance exception to the hearsay rule. Because the trial court should not have sustained appellant's hearsay objection, he cannot show that the trial court erred by denying his motion for mistrial based on that same erroneously sustained objection. We overrule appellant's fifth issue.

## V. Appellant has not shown that he received ineffective assistance of counsel.

In his sixth issue appellant argues that he received ineffective assistance of

counsel in two different ways. First, he contends his counsel was ineffective when he failed to request notice of the State's expert witnesses, which appellant contends resulted in prejudicial testimony by those two experts. Second, appellant asserts his counsel rendered ineffective assistance when he failed to enforce his request for an instruction to disregard inadmissible portions of the recorded jailhouse telephone call. Appellant did not file a motion for new trial. We conclude neither allegation establishes that appellant's counsel rendered ineffective assistance.

## A.     Standard of review and applicable law

In reviewing claims of ineffective assistance of counsel, we apply a two-part test. *See Salinas v. State*, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). To establish ineffective assistance of counsel, an appellant must prove by a preponderance of the evidence that (1) his trial counsel's representation was deficient in that it fell below the standard of prevailing professional norms, and (2) there is a reasonable probability that, but for counsel's deficiency, the result of the trial would have been different. *Id.* Failure to make the required showing of either deficient performance or sufficient prejudice defeats a claim of ineffective assistance. *Strickland*, 466 U.S. at 697.

An accused is entitled to reasonably effective assistance of counsel. *King v. State*, 649 S.W.2d 42, 44 (Tex. Crim. App. 1983); *Bradley v. State*, 359 S.W.3d 912, 916 (Tex. App.—Houston [14th Dist.] 2012, pet. ref'd). Reasonably effective assistance of counsel does not mean error-free representation. *Ex parte Felton*, 815 S.W.2d 733, 735 (Tex. Crim. App. 1991). Isolated instances in the record reflecting errors of omission or commission do not render counsel's performance ineffective, nor can ineffective assistance of counsel be established by isolating one portion of trial counsel's performance for examination. *Wert v. State*, 383

S.W.3d 747, 753 (Tex. App.—Houston [14th Dist.] 2012, no pet.). Therefore, when evaluating a claim of ineffective assistance, we consider the totality of the representation and the particular circumstances of the case. *Lopez v. State*, 343 S.W.3d 137, 143 (Tex. Crim. App. 2011); *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999).

There is a strong presumption that trial counsel's actions and decisions were reasonably professional and were motivated by sound trial strategy. *Salinas*, 163 S.W.3d at 740. It is not sufficient that an appellant show, with the benefit of hindsight, that his counsel's actions or omissions during trial were merely of questionable competence. *Lopez*, 343 S.W.3d at 143. Instead, in order for an appellate court to conclude that counsel rendered ineffective assistance, counsel's deficiency must be affirmatively demonstrated in the trial record and the court must not engage in retrospective speculation. *Id.* at 142. When such direct evidence is not available, we will assume trial counsel had a strategy if any reasonably sound strategic motivation can be imagined. *Id.* at 143.

Trial counsel should ordinarily be afforded an opportunity to explain his actions before being denounced as ineffective. *Menefield v. State*, 363 S.W.3d 591, 593 (Tex. Crim. App. 2012). Unless trial counsel has had an opportunity to give specific explanations for his decisions, a record on direct appeal will rarely contain sufficient information to evaluate an ineffective assistance claim. *Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002). When no reasonable trial strategy could justify trial counsel's conduct, however, trial counsel's performance falls below an objective standard of reasonableness as a matter of law, regardless of whether the record adequately reflects trial counsel's subjective reasons for acting as he did. *Lopez*, 343 S.W.3d at 143. In other words, when trial counsel has not had an opportunity to explain his actions or inactions, an appellate court cannot

find deficient performance unless the challenged conduct was "so outrageous that no competent attorney would have engaged in it." *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005).

### B. Appellant has not shown that he suffered prejudice because of his trial counsel's failure to request notice of the State's experts.

In the first part of his sixth issue appellant argues that his trial counsel rendered ineffective assistance because he failed to request notice of the State's two expert witnesses. *See* Tex. Code Crim. Proc. Ann. art. 39.14(b) (requiring the State to disclose expert witnesses only when the defendant makes a timely request). The experts at issue were Deputy Juan Lerma, a crime scene investigator with the Harris County Sheriff's Department, and Jason Schroeder, a technical reviewer for a gunshot residue report prepared at the Harris County Institute of Forensic Science. Lerma applied a gunshot residue test to Valdez's hands a few hours after the Kroger shooting. Schroeder reviewed the report prepared by a colleague at the Harris County Institute of Forensic Science which found no gunshot residue on Valdez's hands.

When the State prepared to call the first of the two experts, appellant's counsel objected to both experts testifying. After the trial court confirmed that appellant's counsel had not filed a request for a discovery order, she overruled appellant's objection. The trial court then offered appellant's counsel additional time if he needed it. At this point, appellant's counsel argued that the gunshot residue evidence was not relevant because there was no evidence indicating that Valdez had fired a gun. The trial court overruled the relevance objection and again offered appellant's counsel additional time to prepare. Appellant declined the trial court's offer of additional time because "there was nothing to it," the gunshot residue report was a single page and the tests on Valdez were negative. The State

then called the two experts and they confirmed that the gunshot residue tests on Valdez were negative.

Even if we assume that trial counsel's failure to request a discovery order establishes the deficient performance prong, we conclude appellant cannot demonstrate he was prejudiced by his trial counsel's failure. This is so because appellant did not allege that he acted in self-defense, instead his defense centered on identity. Therefore, he cannot show that the result of the trial would have been different if his trial counsel had timely requested a discovery order.

C.     **Appellant has not shown that his trial counsel's performance was deficient when he allegedly failed to follow up on a request for an instruction to disregard portions of the recorded jailhouse telephone call.**

In the second part of this sixth issue appellant argues that if we determine he waived his fourth issue, his trial counsel rendered ineffective assistance because he allegedly failed to enforce his request for an instruction to disregard. We conclude appellant has not shown on this record that his trial counsel's performance was deficient. *See Bone*, 77 S.W.3d at 833.

Since no motion for new trial was filed alleging appellant's trial counsel rendered ineffective assistance of counsel, appellant's trial counsel has not had an opportunity to explain this decision. *See Menefield*, 363 S.W.3d at 593 (stating that trial counsel should ordinarily be afforded an opportunity to explain his actions before being denounced as ineffective). It is possible appellant's trial counsel decided that insisting on an instruction to disregard, given immediately or the next trial day before the redacted audio recording was played for the jury, would have drawn additional attention to the smoking comment, a comment that the jury might already have forgotten after the lengthy bench conference regarding the admissibility of portions of the audio recording. *See Orellana v. State*, 489

S.W.3d 537, 550 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd) (stating that it is possible defendant's trial counsel chose not to object based on a reasonable trial strategy to not draw additional, possibly negative, attention to the ambiguous comment). We conclude appellant has not met his burden to establish that his trial counsel's performance with respect to the jailhouse telephone call recording was deficient. Because appellant has not established the first *Strickland* prong, we do not reach the prejudice prong. *See Strickland*, 466 U.S. at 697.

Having rejected both arguments raised in his sixth issue, we overrule appellant's sixth issue.

## VI. Appellant has not shown that his trial was fundamentally unfair.

Appellant argues in his seventh issue that "the cumulative effect of all errors rendered the trial fundamentally unfair." We disagree.

In *Linney v. State*, we recognized that "a number of errors, even if harmless when separately considered, may be harmful in their cumulative effect." 401 S.W.3d 764, 782 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd). While we recognized that possibility existed, we also pointed out that non-errors "may not produce harm in their cumulative effect." *Id.* Because we have rejected each issue raised by appellant, we are presented with the latter situation rather than the former. *See Buntion v. State*, 482 S.W.3d 58, 79 (Tex. Crim. App. 2016) (rejecting cumulative harm argument because "appellant has failed to prove error concerning each of these claims separately"); *Estrada v. State*, 313 S.W.3d 274, 311 (Tex. Crim. App. 2010) (stating that the cumulative effect doctrine provides relief only if the cumulative effect of *errors* rendered the trial fundamentally unfair) (emphasis added); *Hughes v. State*, 24 S.W.3d 833, 844 (Tex. Crim. App. 2000) ("Having found no constitutional violations, however, no cumulative harm could have occurred.") (internal quotations omitted). We overrule appellant's seventh issue.

## Conclusion

Having overruled appellant's issues on appeal, we affirm the trial court's judgment.

/s/    Jerry Zimmerer
        Justice

Panel consists of Chief Justice Christopher and Justices Zimmerer and Wilson.

Do Not Publish — Tex. R. App. P. 47.2(b).